UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

In re:                                                          Chapter 7

                                                                Case No: 09-14014-ALG
PROBULK INC., *et al.,*                                         (Jointly Administered)

                    Debtors.


----------------------------------------------------------------x
Salvatore LaMonica, Esq., as Interim Chapter 7 Trustee
of the Estates of PROBULK INC., *et al.,*

                    Plaintiff,

-against-                                                        Adv. Pro. No. 09-01315

North of England Protecting and Indemnity
Association Limited and UK P&I Club d/b/a
United Kingdom Mutual Steam Ship Assurance
Association (Bermuda) Limited and The United
Kingdom Mutual Steam Ship Assurance
Association (Europe) Limited,

                    Defendants.
----------------------------------------------------------------x

## MEMORANDUM OF DECISION AND ORDER

**APPEARANCES:**

LAMONICA HERBST & MANISCALCO LLP
Attorneys for the Chapter 7 Trustee
    By: Salvatore LaMonica, Esq.
        Gary E. Herbst, Esq.
        Adam P. Wofse, Esq.
3305 Jerusalem Avenue
Wantagh, NY 11793

PILLSBURY WINTHROP SHAW PITTMAN LLP
Attorneys for the Debtors
    By: Karen Dine, Esq.
1540 Broadway
New York, NY 10036

BURKE & PARSONS
Attorneys for the United Kingdom Mutual Steam Ship Assurance
Association (Bermuda) Limited and The United
Kingdom Mutual Steam Ship Assurance
Association (Europe) Limited
    By: Christopher H. Dillon, Esq.
100 Park Avenue
New York, NY 10017-5533

FREEHILL HOGAN & MAHAR LLP
Attorneys for North of England Protecting and Indemnity
Association Limited
    By: Michael E. Unger, Esq.
        Susan Lee, Esq.
80 Pine Street, 24 Fl.
New York, NY 10005

SCHULTE ROTH & ZABEL LLP
Attorneys for Aozora Bank, Ltd.
    By: Lawrence V. Gelber, Esq.
919 Third Avenue
New York, NY 10022

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

On June 23, 2009, 57 of the above-captioned debtors filed Chapter 7 petitions in

this Court, and on June 25, 2009 another 16 companies filed similar petitions.  The 73

cases have been consolidated for procedural purposes, and Salvatore LaMonica has been

appointed and is serving as interim trustee (the "Trustee").  The Trustee has been given

authority to operate the debtors' business for a 30-day period, subject to extension for

cause, and to pay expenses necessary to avoid immediate and irreparable harm to the

estates.

Each of the debtors owned, operated or managed one or more ocean-going

reefers, dry bulk ships, tankers, containers or freezer vessels.  There is no dispute that the

debtors were headquartered in and managed their business from offices in New York

City, although the vessels were flagged abroad.  There is also no dispute that the Trustee

is attempting to wind down the debtors' affairs as expeditiously and effectively as

possible.  Thus, he is having the debtors complete outstanding voyages but not

commence new ones, he is expeditiously abandoning vessels to secured lenders where the

vessels have no value to the estates, he is preparing for an immediate sale of any vessels

that have value to the estates, and he is attempting to prevent the chaos that would ensue

if he abandoned all of the vessels forthwith, whether or not they were in mid-voyage,

whether or not their crews would take them to an appropriate port, and whether or not

their cargo would rot in the meantime.

The question raised is whether the Trustee will be able to wind down the debtors'

operations in a reasonable fashion with insurance coverage for the vessels or whether he

will have to abandon the vessels immediately.

### *The Trustee's Motion and Adversary Proceeding*

On June 26, 2009, the Trustee filed an emergency motion seeking a temporary

restraining order to prevent the insurers who had provided coverage for the debtors'

vessels from canceling outstanding insurance or, to the extent necessary, to require the

insurers to restore coverage that existed prior to the bankruptcy petitions.  The Court held

a telephonic conference on the request for a temporary restraining order and, after hearing

from counsel for the insurers, entered an order that granted the Trustee relief.  The

Trustee thereafter filed an adversary proceeding that seeks precisely the same relief

sought in his motion.

The two relevant insurers, which provided the debtors with, among other things,

protection and indemnity for certain third party liabilities in connection with maritime

operations ("P&I risks"), are the UK P&I Club and the North of England Protecting and Indemnity Assoc. Ltd. (collectively, the "Clubs").[1] The Clubs' principal contention in connection with the instant motion is that the Trustee has not established the two prongs necessary for a party to obtain a preliminary injunction: (i) irreparable injury if preliminary relief is not granted; and (ii) either a probability of success on the merits or, in some cases, "sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the plaintiff's favor." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). We start with the second prong, because the basis of the Clubs' argument is that the debtors' insurance terminated by virtue of a clause in their contracts and English law.

### Probability of Success on the Merits

The Clubs' argument that the Trustee's motion lacks probability of success on the merits rests on a so-called "cesser" clause in their contracts, providing that insurance automatically terminates in the event that a member of the Club (the insured) passes "a resolution for a voluntary winding up."[2] They claim that this clause results in a termination of coverage even before a bankruptcy or insolvency filing, apparently recognizing (without conceding) that the U.S. Bankruptcy Code may invalidate certain forfeitures that result from the act of filing a petition under Title 11.

---

[1] The UK P&I Club does business through The United Kingdom Mutual Steam Ship Assurance Association (Bermuda) Limited and The United Kingdom Mutual Steam Ship Assurance Association (Europe) Limited.

[2] The language is from the UK Club's agreement, but the North of England Club's documents contain similar provisions. Of course, there was no resolution for a "voluntary winding up." This is an English term. The debtors' boards authorized a bankruptcy filing, which in these cases resulted in the appointment of a trustee. However, the UK Club's agreement also contains a provision providing for the automatic cessation of insurance if the insured commences "proceedings under any bankruptcy or insolvency laws." *See* Declaration of Edward (Ted) Graham, dated July 2, 2009, ¶ 11. As explained hereafter, it is irrelevant whether the "cesser clause" was triggered by a resolution to file an insolvency case or the actual filing.

The Bankruptcy Code is not so easily evaded.  There is no question that in the circumstances at bar their insurance rights constituted property of the debtors.  *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir. 1988), *cert. denied*, 488 U.S. 868 (1988).  Section 541(c)(1)(B) of the Bankruptcy Code provides, with exceptions not applicable here, that an interest of the debtor in property becomes property of the estate

> notwithstanding any provision in an agreement . . . or applicable nonbankruptcy law . . . that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

11 U.S.C. 541(c)(1)(B).  There is thus no question that the debtors' insurance rights continued notwithstanding the Clubs' attempt to deem them terminated as a consequence of the resolutions of the boards of directors of the debtors authorizing a bankruptcy filing and the prospective appointment of a trustee or custodian.[3]  *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Camp (In re Government Securities Corp.)*, 972 F.2d 328, 329-30 (11th Cir. 1992), *cert. denied*, 507 U.S. 952 (1993).

Section 541(c) applies "notwithstanding any provision in . . . applicable nonbankruptcy law."  Thus the fact that the provisions of the Clubs' contracts are authorized under U.K. law or that the contracts are governed by U.K. law is not determinative.  *See Patterson v. Shumate*, 504 U.S. 753, 758 (1992) (Section 541

---

[3] The term "custodian" is broadly defined as a "receiver" or "agent" under "applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor . . . for the purpose of general administration of such property for the benefit of the debtor's creditors."  11 U.S.C. § 101 (11).

"contains no limitation on 'applicable nonbankruptcy law' relating to the source of the law.").[4]

In any event, if there were any question as to the scope of § 541(c)(1) in these cases, it is answered by the provisions of 28 U.S.C. §1334.  Section 1334(e)(1) gives the district court, and by referral this court, exclusive jurisdiction "of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."  Section 1334(e) extends this Court's jurisdiction to property "wherever located" and to actions taken by foreign entities with respect to such property.  *See Hong Kong & Shanghai Banking Corp., Ltd. v. Simon (In re Simon)*, 153 F.3d 991, 996 (9th Cir. 1998), *cert. denied*, 525 U.S. 1141 (1999); *In re Gucci*, 309 B.R. 679, 683-84 (S.D.N.Y. 2004), *on further appeal after remand*, 2005 U.S. Dist. Lexis 29871 (S.D.N.Y. Nov. 28, 2005), *aff'd*. 197 Fed. Appx. 58 (2d Cir. 2006); *In re McLean Industries, Inc.*, 68 B.R. 690 (Bankr. S.D.N.Y. 1986) and 76 B.R. 291 (Bankr. S.D.N.Y. 1987).  The fact that the debtors' world-wide insurance rights became property of the estate makes applicable § 362(a)(3) of the Bankruptcy Code, creating an automatic stay in bankruptcy that, among other things, prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  This prevents a party to a contract from terminating the contract or taking action to deem the contract terminated after the bankruptcy case has commenced without seeking relief from the stay, and it is obviously applicable to insurance contracts.  *See* 3 Collier on

---

[4] In *In re Atlas Shipping A/S*, 404 B.R. 726, 744, n. 16 (Bankr. S.D.N.Y. 2009), this Court recently observed that it could find no authority addressing whether the term "applicable law" as used in § 544(b)(1) of the Bankruptcy Code included foreign law.  In the context of § 541, there is no reason to exclude foreign law; as discussed below, the jurisdiction of the bankruptcy court extends to property "wherever located." Of course, there may be practical as well as theoretical reasons for limiting the scope of U.S. jurisdiction in a case, particularly where a foreign proceeding is pending, but this would not justify construing the term "applicable law" as excluding foreign law as a matter of principle.

*Bankruptcy* ¶ 362.03[5][b] (15th ed. 2005) ("Certainly an insurer should not be permitted to cancel a policy merely because a debtor is in bankruptcy.").

The fact that § 362(a)(3) and the automatic stay are applicable means that any effort on the part of the Clubs to terminate the insurance policies would require a motion on their part for relief from the stay.  There is no need to determine at this point whether there is any validity to the arguments in the Clubs' papers that they are non-profit associations rather than insurers, that it is "unfair" to require them to continue insurance after a U.S. bankruptcy filing, and that they did not anticipate such a result (nothwithstanding more than 30 years' experience with the U.S. bankruptcy laws).[5] Suffice it to say that the burden is on the Clubs to move for relief from the stay and establish both the relevance and validity of their contentions.  Unquestionably, the Clubs can move for relief from the stay to terminate the policies for non-payment of applicable premiums.[6]  They may also argue that certain disputes regarding coverage should be referred to arbitration in London, as provided in the Clubs' agreements.  However, the effect of the "cesser clause" and the application of  §§ 541(c)(1)(B) and 362(a) of the Bankruptcy Code are not subject to the provisions of the Clubs' agreements.  These issues implicate core provisions of the Bankruptcy Code and core bankruptcy concerns, matters that need not be referred to arbitration in London or anywhere else.  *See In re*

---

[5] It is worth noting that there is nothing in the record to date that indicates that the Clubs' risks have been materially increased by virtue of the debtors' bankruptcy filings. Since the filings, there was apparently one situation in the Port of Chittagong, Bangladesh involving the slippage of an anchor of one of the debtors' vessels that may have caused some damage to another vessel.  However, there is no contention that the anchor slippage was the result of the filings in New York.

[6] There is much in the Clubs' papers regarding the debtors' liability for unpaid premiums and calls. However, the Clubs have not moved for relief from the stay to terminate the insurance for non-payment of premiums.  One of the Clubs has admitted that no such payments are due yet, and the other Club has suggested that the Trustee might be able to cure the non-payment by paying the reasonable value of the post-petition insurance, citing *In re Gamma Fishing Co., Inc.*, 70 B.R., 949, 957 (Bankr. S.D.Cal. 1987). The Clubs' rights to file a motion seeking amounts due are preserved.

*United States Lines, Inc.*, 197 F.3d 631 (2d Cir. 1999); *In re Prudential Lines, Inc.*, 533

F.3d 151 (2d Cir. 2008); *In re Treco*, 240 F.3d 148, 162-63 (2d Cir. 2001); *In re*

*Millenium Seacarriers*, 354 B.R. 674, 679 (Bankr. S.D.N.Y. 2006) ("This Court, and not

a London arbitration panel, is the best forum . . . to interpret issues of bankruptcy practice

and bankruptcy law . . . .").

In sum, the Trustee has demonstrated that he has a clear probability of success on

the merits in seeking a preliminary injunction against the Clubs' purported termination of

the debtors' insurance.  He has also demonstrated that application of the "cesser clause"

would constitute a violation of the automatic stay, putting the burden on the Clubs to

move to vacate it.  The fact that the burden is on the Clubs makes immaterial the fact that

the Trustee initially proceeded by motion rather than by the commencement of an

adversary proceeding.  The Trustee has corrected this omission, and it did not deprive the

Clubs of any substantial rights.  *See Fortune & Faal v. Zumbrun (In re Zumbrun),* 88

B.R. 250 (9th Cir.B.A.P. 1988); *In re Hooker Investments, Inc.*, 116 B.R. 375, 378

(Bankr. S.D.N.Y. 1990).[7]

### *Irreparable Injury*

The fact that the automatic stay and the jurisdiction of the Bankruptcy Court is at

issue relieves the Trustee of having to prove irreparable injury in order to obtain a

preliminary injunction.  It has been held that a debtor need not prove irreparable injury if

the requested injunction is necessary in order to preserve the jurisdiction of the

---

[7] A day after the Court heard the present matter, but before the issuance of this opinion, the Clubs brought
to the Court's attention *In re Policy Realty Corp.*, 242 B.R. 121, 126 (S.D.N.Y. 1999), *aff'd*, 2000 WL
534265 (2d Cir. May 2, 2000), for the proposition that the automatic stay does not prevent the post-petition
termination of a contract in all situations.  The Court does not dispute the proposition that a contract may,
by its own terms, terminate post-petition.  *See In re Empire Equities Capital Corp.*, 405 B.R. 687, 689
(Bankr. S.D.N.Y. 2009), and cases cited therein.  The difference here is that the Clubs purport to deem the
contracts terminated by virtue of clauses invalidated by § 541(c)(1)(B).

Bankruptcy Court, especially if the automatic stay is at issue. *See, e.g., In re Chateaugay Corp., Reomar, Inc.*, 93 B.R. 26, 29 (S.D.N.Y. 1988); *Johns-Manville Corp. v. Colorado Ins. Guar. Assn. (In re Johns-Manville Corp.)*, 91 B.R. 225, 227-28 (Bankr. S.D.N.Y. 1988); *In re Go-West Entertainment, Inc.*, 387 B.R. 435, 440, n. 2 (Bankr. S.D.N.Y. 2008). Even if that were not so, the record contains sufficient evidence that the termination of insurance would constitute irreparable injury under the facts of this case. Even though the Trustee is winding down the debtors' business, he has to act reasonably in the interests of all stakeholders. Without insurance he would have to abandon the vessels, some of them in mid-voyage, resulting in the possibility of loss of cargo and loss of the vessels themselves. He has stated without contradiction that he has attempted unsuccessfully to obtain other insurance for the vessels.[8] Under the circumstances, the loss of insurance would clearly constitute irreparable injury. *Whelan v. Colgan*, 602 F.2d 1060, 1062 (2d Cir. 1979); *see also In re WorldCom, Inc. Securities Litigation*, 354 F.Supp.2d 455, 469 (S.D.N.Y. 2005).

### *Personal Jurisdiction*

The Clubs raise a further objection to the relief sought by the Trustee, claiming that they are not subject to the personal jurisdiction of this Court. They argue that where injunctive relief is sought a court that may have subject matter jurisdiction may issue an injunction only against an entity over which it has personal jurisdiction. They also contend that the Trustee has the burden of establishing personal jurisdiction. But they then stand mute, never contending, for example, that their representatives never entered the United States in connection with their sale of insurance to a company located in the

---

[8] At the hearing referred to in footnote 7, counsel again represented that the Trustee continues to make every effort to obtain alternative insurance, without success to date.

United States or that their provision of insurance coverage did not have a substantial effect on a business located in the United States.  These, of course, are the facts that are frequently considered in determining issues relating to personal jurisdiction.  *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996).

In *In re McLean Industries, Inc.*, 68 B.R. at 697, n. 4, the Court left open two "highly interesting issues": (i) whether "in personam jurisdiction may be posited on the notion that the interest of the United States in administering bankruptcy proceedings of domestic corporation is so strong as to justify the right of its courts, in the exercise of exclusive jurisdiction over the property of the estate afforded by 28 U.S.C. § 1334(d) [now § 1334(e)(1)], to enjoin attempts to divest them of that jurisdiction and to determine the rights of all creditors wherever they may be"; and (ii) whether "jurisdiction may be found on the basis that [action taken abroad] had a substantial, direct and foreseeable effect on the administration of this estate that 11 U.S.C. § 362(a) was designed to prevent."  These issues must be reached herein.  For purposes of the record in these cases, the Trustee has adequately established that termination of the debtors' insurance because of an insolvency event would have an immediate, substantial, direct and foreseeable impact on U.S. debtors that § 541(c)(1)(B) and § 362(a) were designed to prevent.  *See also In re Chiles Power Supply Co., Inc.*, 264 B.R. 533, 543  (Bankr.W.D.Mo. 2001), where the Court said, "By issuing process that violates a bankruptcy court order, a creditor is affecting the very ability of the bankruptcy court to govern such a liquidation and to fairly distribute same and is tampering with the exclusive jurisdiction over all such property afforded by 28 U.S.C. § 1334[e]." (internal quotation and citation omitted). Termination of insurance would also subvert the interest of the United States in

administering bankruptcy proceedings of domestic corporations in one forum.  The Trustee of these domestic corporations in U.S. bankruptcy proceedings has therefore made out a *prima facie* case that personal jurisdiction exists over insurers that provided such corporations with world-wide P & I cover.

      This does not mean that the Clubs cannot raise an issue of personal jurisdiction and support it appropriately, if any such issue exists.  However, in cases like these, where the Trustee has shown a substantial course of business between the parties and a substantial effect within the United States, as well as a clear need for immediate relief and severe injury absent that relief, a foreign entity cannot stand mute and contend, in effect, "catch me if you can."  Any other rule would invite foreign entities doing substantial business with U.S. companies to violate the stay, stand mute in connection with an extended dispute involving personal jurisdiction, and create the very damage that the automatic stay is designed to prevent.

**CONCLUSION**

For the reasons stated above, the Court holds that the purported termination of the debtors' insurance based on the "cesser clause" of the Clubs' policies was ineffective by virtue of 11 U.S.C. § 541(c)(1)(B) and that any action to validate such termination would be void as a violation of the automatic stay of § 362 of the Bankruptcy Code. The Trustee is directed to settle an appropriate order on two days' notice providing for injunctive relief enforcing the stay. Pending the entry of such an order, the preliminary relief contained in this Court's order to show cause dated June 26, 2009, as amended on June 30, 2009, is continued. **IT IS SO ORDERED.**


Dated: New York, New York
        July 7, 2009, at 4:50 p.m.

                              */s/ Allan L. Gropper*_____
                              UNITED STATES BANKRUPTCY JUDGE