**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:                                                                 Chapter 7

PROBULK INC., et al.,                                      Case No. 09-14014 (ALG)

                               Debtors.              (Jointly Administered)
------------------------------------------------------------x

## MEMORANDUM OF OPINION AND ORDER

A P P E A R A N C E S:

LAMONICA HERBST & MANISCALCO
Counsel for Chapter 7 Trustee
  By:  Jacqulyn S. Giunta
3305 Jerusalem Avenue
Wantagh, NY 11793

LISCR, LLC
  By:  Greg Maj
       General Counsel
99 Park Avenue
Suite 1830
New York, NY 10016

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

      Before the Court are four objections of Salvatore LaMonica, the Chapter 7 trustee (the "Trustee") of the jointly administered estates of Probulk, Inc., *et al*. (the "Debtors") seeking to reclassify the following four claims filed by LISCR, LLC ("LISCR"), each to a general unsecured claim:  (i) claim no. 14 in *In re: Amundsen Wind, Ltd.*, Case No. 09-14035; (ii) claim no. 13 in *In re: Silver Wind LLC*, Case No. 09-14020; (iii) claim no. 5 in *In re: Eurus Ohio LLC,* Case No. 09-14134; and (iv) claim no. 7 in *In re: Eurus Oregon LLC,* Case No. 09-14132 ((i)–(iv), collectively, the "LISCR Claims").  LISCR acts as the exclusive administrator of the

1

Liberian ship registry and has been designated and appointed by the Republic of Liberia ("Liberia") as its agent in connection with the regulation of all Liberian-flagged vessels. LISCR has responded to the Trustee's objections by asserting that the LISCR Claims represent annual tonnage and other taxes due to Liberia and that such taxes are entitled to priority pursuant to § 507(a)(8)(B)[1] and § 507(a)(8)(C)[2] of the United States Bankruptcy Code (the "Bankruptcy Code"). For the reasons set forth below, the objections are denied with respect to certain of the Claims, and adjourned until further evidence can be presented by LISCR as to the nature of its remaining claims.

## FACTS

In its capacity as administrator, LISCR asserts it is obligated to collect certain taxes and fees, including registration fees, certification fees and tonnage taxes, on behalf of Liberia. On February 3, 2010, LISCR filed the LISCR Claims in the aggregate amount of $65,690.34. Each claim is designated as a priority claim for taxes owed.[3] LISCR has submitted 51 invoices as evidence in support of the LISCR Claims.

On or about October 19, 2010, the Trustee filed the objections, which assert that the LISCR Claims are for delinquent registration and transfer fees owed to Liberia and, as such, do not qualify as taxes or penalties under § 507(a)(8) of the Bankruptcy Code. On this basis, the Trustee seeks to deny priority status to the LISCR Claims and to reclassify the LISCR Claims to general unsecured status.

---

[1] LISCR's motions in opposition to the objections ("LISCR's Opposition Motions") reference § 507(a)(8)(3), but this appears to be intended to refer to § 507(a)(8)(B).
[2] LISCR's Opposition Motions reference § 507(a)(8)(4), but this appears to be intended to refer to § 507(a)(8)(C).
[3] The Trustee asserts that the LISCR Claims were filed as "priority claim[s] for taxes and penalties." (Objections at ¶ 9). However, LISCR asserts that its claims are for amounts due and owing on account of "annual tonnage and other taxes" and makes no reference of any penalties. As explained more fully below, the precise nature of some portions of the asserted claims are unclear.

2

**DISCUSSION**

The Trustee's sole argument in favor of reclassifying the LISCR Claims as general unsecured claims is that the asserted "registration and transfer fees do not qualify as taxes and penalties under Bankruptcy Code § 507(a)(8) and are not entitled to priority status."[4] In response, LISCR contends that its claims are entitled to priority pursuant to either 11 U.S.C. § 507(a)(8)(B) or 11 U.S.C. § 507(a)(8)(C). We will address each subsection in turn, but first address the issue of the burden of proof.

1. **Burden of Proof**

A proof of claim executed and filed in accordance with the requirements of the Bankruptcy Code and the applicable Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") constitutes *prima facie* evidence of the amount and validity of the claim.[5] Notwithstanding such *prima facie* validity, however, the burden of proving an entitlement to priority for a claim rests with the party requesting such priority.[6] In the instant matter, therefore, LISCR bears the burden of proof that the LISCR Claims are entitled to priority pursuant to §§ 507(a)(8)(B) or (C) of the Bankruptcy Code.

2. **Section 507(a)(8)(B) – Priority for Property Taxes**

Section 507(a)(8)(B) provides priority status for:

> allowed unsecured claims of governmental units, only to the extent that such claims are for . . . (B) a property tax incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition

---

[4] *See* each objection at ¶ 9.
[5] *See* Bankruptcy Rule 3001(f); *see* 11 U.S.C. § 502(a) (providing that claims are "deemed allowed" unless a party in interest objects).
[6] *See Supplee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*, 479 F.3d 167, 172 (2d Cir. 2007); *see also*, 4 Collier on Bankruptcy ¶ 507.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

3

Thus, § 507(a)(8)(B) requires the satisfaction of four conditions: (i) the creditor claiming priority must be a governmental unit; (ii) the claim relates to a property tax; (iii) the claim was incurred pre-petition; and (iv) the last date the relevant property taxes could have been paid without penalty was less than one year prior to the petition date. We address each condition in turn.

### A. Governmental Unit

In relevant part, 11 U.S.C. § 101(27) defines a "governmental unit" as including an "agency, or instrumentality of . . . a foreign state." LISCR submits that it acts as the exclusive administrator of the Liberian ship registry and has been designated and appointed by Liberia to provide maritime regulatory services for all Liberian-flagged vessels.[7] As such, LISCR asserts that it is obligated to collect certain annual taxes and fees assessed on ships by Liberia and to transmit those annual taxes to the Liberian government.[8] An agency relationship exists where there is "a fiduciary relationship which results from the manifestation of consent of one person to allow another to act on his or her behalf and subject to his or her control, and consent by the other so to act . . . ."[9] Liberia is a foreign state and by collecting certain annual taxes at the direction of the Liberian government and transmitting those taxes onward to Liberia, LISCR acted as Liberia's agent. Therefore, LISCR constitutes a governmental unit within the meaning of § 101(27) of the Bankruptcy Code, a matter that is not disputed by the Trustee.

### B. Property Tax

The second prong of § 507(a)(8)(B) requires LISCR to demonstrate that the LISCR Claims relate to a tax on property. The Bankruptcy Code does not define the terms "tax" or

---

[7] *See* ¶ 2 of each of LISCR's Opposition Motions.
[8] *See Id*.
[9] *Robert Smalls Inc. v. Hamilton*, No. 09-7171 (DAB)(JLC), 2010 WL 3238955 at *7 (S.D.N.Y. July 19, 2010) (*adopted in* 2010 WL 3238963 (S.D.N.Y. Aug. 11, 2010)); *See* Restatement (Third) of Agency § 1.01.

4

"property tax," leaving it to the courts to conduct a "functional examination" of whether any particular levy should be considered a tax or property tax.[10] The Second Circuit Court of Appeals has held that there are four elements that characterize a tax, which are as follows: "(a) An involuntary pecuniary burden, regardless of name, laid upon the individuals or property; (b) Imposed by, or under authority of the legislature; (c) For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; [and] (d) Under the police or taxing powers of the state."[11] To the extent this Court determines that the LISCR Claims are for taxes, this Court must also consider whether such taxes constitute property taxes. Although the term property tax often refers to a tax assessed on real property, a tax assessed on the value of personal property may also constitute a property tax within the meaning of the Bankruptcy Code.[12] For example, the court in *Precision Concepts* held that taxes assessed against certain machinery, fixtures, equipment and supplies used in the debtor's telecommunications equipment manufacturing business constituted property taxes entitled to priority under § 507(a)(8)(B).[13] Similarly, in *Wang Zi Cashmere Prod.*, the court held that taxes imposed on a debtor's inventory, furniture and equipment were property taxes and therefore entitled to priority pursuant to § 507(a)(8)(B) of the Bankruptcy Code.[14]

In the instant matter, LISCR claims that all of the taxes relate to "annual tonnage taxes" it is required to collect "for each Liberian-flagged vessel according to § 54 of the Liberian Maritime Law (Title 21)."[15] In relevant part, the statute states that "[e]ach vessel registered under the provision of this Chapter shall pay . . . an annual tonnage tax computed in accordance

---

[10] *See United States v. Reorganized CF & I Fabricators, Inc.*, 518 U.S. 213, 224 (1996).
[11] *In re Chateaugay Corp.*, 53 F.3d 478, 498 (2d Cir. 1995) (citing *In re Lorber Indus., Inc.*, 675 F.2d 1062, 1066 (9th Cir. 1982)).
[12] 4 Collier on Bankruptcy ¶ 507.11[3][a]; *see In re Precision Concepts, Inc.*, 305 B.R. 438 (Bankr. M.D.N.C. 2004); *In re Wang Zi Cashmere Prod. Inc.,* 202 B.R. 228 (Bankr. D.Md. 1996).
[13] 305 B.R. at 446.
[14] 202 B.R. at 231.
[15] *See* ¶ 3 of each of LISCR's Opposition Motions, which reference § 54 of the Liberian Maritime Law (Title 21).

5

with the Domestic Watercraft Law."[16] The annual tonnage taxes are assessed on vessels, which were tangible, personal property owned by the Debtors and used in the ordinary course of the Debtors' businesses. The Trustee has not provided any support for the proposition that annual tonnage taxes assessed by Liberia are not personal property taxes; *i.e.*, taxes based on Liberian-flagged vessels. Therefore, to the extent LISCR seeks a claim for taxes assessed on the tonnage of Liberian-flagged vessels, the LISCR Claims represent claims based on property taxes.

In support of the LISCR Claims, LISCR submitted 51 invoices, totaling $65,690.34, detailing the charges that it claims are entitled to priority status. Of the total, only $13,353.08 in invoices explicitly references tonnage taxes.[17] As to the remaining $52,337.26, the invoices that LISCR has submitted are inadequate to determine whether such invoice relates to a tax or a property tax. Such invoices include entries for, among other things, registration fees, the issuance of officer's certificates, and courier and handling fees. Such claims cannot be granted priority status on the present record, but, as set forth below, LISCR may submit additional evidence in support of its claims that all of the submitted invoices are entitled to priority.

C. The Claim is a Pre-petition Claim

The next prong is whether the LISCR Claims are for taxes incurred prior to the commencement of the bankruptcy case. Two of the relevant debtors[18] filed their petitions on June 24, 2009 and the other two debtors[19] filed their petitions the following day. Therefore, only property taxes that were incurred prior to the appropriate petition date fulfill this portion of the

---

[16] *See* 21 Liberian Maritime Law § 54.
[17] As discussed below, of that $13,353.08, $5,265.68 represents pre-petition property tax claims and the remaining $8,087.40 represents post-petition property tax claims.
[18] Silver Wind LLC and Amundsen Wind, Ltd.
[19] Eurus Ohio LLC and Eurus Oregon LLC.

test and only four invoices reference tonnage taxes that were incurred prepetition.[20]  It may be that, although certain invoices make reference to a post-petition tonnage tax period, they should nevertheless be considered pre-petition taxes because, under Liberian law, all annual tonnage taxes are due as of January 1 in each year notwithstanding when such taxes are invoiced.[21]  In any event, however, as further discussed below, the remaining tonnage tax invoices would qualify as administrative expenses entitled to priority as a § 503(b)(1)(B) expense and the subsection under which they fall is of no consequence.

### D. Claim was Payable Without Penalty After One Year Before the Date of the Filing of the Petition

None of the relevant invoices for annual tonnage taxes are for a period of time greater than one year before the commencement of the debtor's bankruptcy cases and since no penalties were assessed, the fourth prong of section 507(a)(8)(B) has been satisfied.

### E. Conclusion Under Bankruptcy Law § 507(a)(8)(B)

It appears that only four invoices satisfy all four prongs of § 507(a)(8)(B).  Therefore, only those portions of invoice numbers MT 6210280, MT 6210279, MT 6209103 and MT 6208738 detailing charges for annual tonnage taxes, totaling $5,265.68, are clearly entitled to priority pursuant to § 507(a)(8)(B).

---

[20] Invoice numbers MT 6210280 and MT 6210279, both in the amount of $1,604.84, had an invoice date of January 22, 2009, for the tax period of July 1, 2009 – December 31, 2009.  Invoice number MT 6209103, in the amount of $1,028.00, had an invoice date of October 10, 2008, for the tax period of July 1, 2009 – December 31, 2009.  Invoice number MT 6208738, in the amount of $1,021.00, had an invoice date of October 10, 2008, for the tax period of July, 1 2009 – December 31, 2009.

[21] See 21 Liberian Maritime Law § 83, which states, in pertinent part: "the annual tax imposed by Section 54 of this Chapter, [is] due on the first day of January in each year."  Moreover, § 83 of the Liberian Maritime Law allows that a debtor may choose to pay its bills in bi-annual installments, but this does not alter the fact that the annual tax payments are due on the first of the year.  *Cf. In re Handy Andy Home Improvement Centers, Inc.*, 144 F.3d 1125 (7th Cir. 1998).

7

3. **Section 503(b)(1)(B) – Priority for Administrative Expenses**

As discussed above, certain of the claims for tonnage taxes are for post-petition property tax assessments. Section 503(b)(1)(B) provides an administrative expense priority for certain post-petition tax claims, as follows:

> After notice and a hearing, there shall be allowed, administrative expenses, . . . including– (B) any tax—incurred by the estate whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both, except a tax of a kind specified in section 507(a)(8)

To receive priority treatment under § 503(b)(1)(B) LISCR need only to prove that: (i) the tax was incurred by the estate; and (ii) such taxes are not entitled to priority under § 507(a)(8). The post-petition tonnage tax claims, in the amount of $8,087.40, represent claims for property taxes incurred post-petition, and LISCR has established that it is entitled to priority pursuant to § 503(b)(1)(B) for $8,087.40 in post-petition tonnage tax assessments.[22]

4. **Section 507(a)(8)(C) – Priority for Trust Fund Taxes**

LISCR also asserts that its claims are entitled to priority under § 507(a)(8)(C) of the Bankruptcy Code, which provides priority status for:

> allowed unsecured claims of governmental units, only to the extent that such claims are for . . . (C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity

This section, however, establishes a priority only for so-called "trust fund" taxes that the debtor is required to collect or withhold from a third party, such as income taxes and the employee's

---

[22] Invoice numbers MT 6212277 and MT 6212276, both in the amount of $2,461.20, had an invoice date of October 1, 2009 for the tax period of July 1, 2010 – December 31, 2010. Invoice number MT 6112084, in the amount of $1,028.00, had an invoice date of October 1, 2009 for the tax period of January 1, 2010- June 30, 2010. Invoice number MT 6211993, in the amount of $1,028.00, had an invoice date of October 1, 2009 for the tax period of July 1, 2010 – December 31, 2010. Invoice number MT 6111717, in the amount of $1,021.00, had an invoice date of October 1, 2009 for the tax period of January 1, 2010 – June 30, 2010. Invoice number MT 6211632, in the amount of $1,021.00, had an invoice date of October 1, 2009 for the tax period of July 1, 2010 – December 31, 2010. Each of these invoices were mailed on or around October 1, 2009, which is subsequent to the relevant petition dates, and related to tax liabilities for the 2010 calendar year.

portion of Social Security taxes.[23] The tax must be collected or withheld *by the debtor* from a third party.[24] For example, in *Illinois Dept. of Revenue v. Hayslett*[25] the Illinois Department of Revenue claimed that it should be awarded priority under § 507(a)(8)(C) for certain unpaid fuel taxes. The Court found that only taxes that were collected by a debtor who, subsequently, remitted those taxes to the government were entitled to priority pursuant to 11 U.S.C. § 507(a)(8)(C).[26] In the instant case, the Debtors did not collect the taxes and remit them to Liberia. The Debtors were directly liable for the amounts at issue and LISCR, and not the Debtors, was obligated to collect, withhold and remit them to Liberia.

For these reasons, the LISCR Claims are not entitled to priority under § 507(a)(8)(C) of the Bankruptcy Code.

## **CONCLUSION**

For the reasons set forth herein, the objections are overruled as to those LISCR Claims representing $5,265.68 of tonnage tax claims entitled to priority pursuant to § 507(a)(8)(B) and $8,087.40 of tonnage tax claims entitled to priority pursuant to § 503(b)(1)(B). As for the remaining objections, LISCR is granted leave to submit additional, supporting evidence to justify its contention that the LISCR Claims are taxes entitled to priority status. LISCR is directed to submit any such evidence within 30 days of the date of this decision or any additional period to which the Trustee may agree or the Court may order for cause. In the absence of such submission, the Trustee's objections to the balance of the LISCR Claims will be sustained.

---

[23] *See Illinois Dept. of Revenue v. Hayslett*, 426 F.3d 899, 902 (7th Cir. 2005); *see* 4 Collier on Bankruptcy ¶ 507.11[4]. Certain sales and excise taxes have also been found to fall within this section when such taxes have characteristics similar to trust fund taxes. *See, e.g., DeChiaro v. New York State Tax Comm'n.*, 760 F.2d 432 (2d Cir. 1985).
[24] *See Hayslett*, 426 F.3d at 902; *see* 4 Collier on Bankruptcy ¶ 507.11[4].
[25] 426 F.3d at 900-01.
[26] *Id.* at 902.

9

**IT IS SO ORDERED**

Dated: December 23, 2010  　　　　　　　　　*/s/ Allan L. Gropper*　　　　　　　　　　
　　　　New York, New York  　　　　　　　　　**ALLAN L. GROPPER**
　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES BANKRUPTCY JUDGE**